Filed 3/27/23  Wu v. Zhong CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| ZHIJUN WU,<br><br>Plaintiff and Appellant,<br>v.<br>JIANBO ZHONG,<br><br>Defendant and Respondent. | A165948<br><br>(San Francisco County<br>Super. Ct. No. CGC-21-595414) |

Zhijun Wu sued Jianbo Zhong, alleging causes of action for conversion and breach of fiduciary duty based on claims Zhong collected rent from one of Wu's tenants on Wu's behalf and then failed to pay over the money.  Zhong filed a cross-complaint against Wu and her mother, Xuezhen Huang, alleging causes of action for fraud, based on claims that he had loaned them money based on false promises by Huang to repay him and that they had participated in a scheme to avoid paying the debt.  Wu then filed an anti-SLAPP special motion to strike, contending that the cross-complaint arose from her protected activity in sending Zhong a prelitigation demand letter and filing suit against him.  The trial court denied the motion, and Wu now appeals.  We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Wu's Complaint against Zhong*

In September 2021, Wu filed a complaint in San Francisco Superior Court alleging that she owned "residential premises known as 405 Girard Street," and that in March or April 2018, her mother, Huang, asked Zhong "to help her manage plaintiff's property the subject premises [*sic*]." In April 2018, Zhong rented 405 Girard Street to a tenant, who agreed to pay $2,500 per month in rent. The tenant paid the monthly rent to Zhong, who would deliver it to Huang.

In October 2018, Huang went to China, and although the tenant continued to pay his monthly rent to Zhong from November 2018 through August 2021, Zhong failed to forward the rent he had collected, which amounted to about $88,000. Wu further alleged that she had sent a written demand to Zhong for the collected rent, to which Zhong had not responded.

Wu alleged causes of action against Zhong for conversion and breach of fiduciary duty, and sought damages of $88,000, plus interest and costs of suit.

### B.    *Zhong's Cross-Complaint against Wu and Huang*

Zhong filed a cross-complaint against Wu and Huang in December 2021, alleging that they owed him more than $87,000 in expenses that he had incurred in connection with their rental properties.

He alleged that Huang, her husband, and their three children (including Wu) immigrated to the United States in September 2012. Huang was the god-daughter of Zhong's mother and was close to Zhong when young, and because of that connection Huang's family lived with Zhong and his family in Zhong's San Francisco home for about five years. Zhong considered Huang a close friend, and trusted her.

2

Huang told Zhong that because she and her husband could not transfer money from China to the United States for their family's living and medical expenses without triggering official review, they wanted to buy income-generating property in San Francisco to pay for their expenses. In November 2012, Zhong helped Huang and her husband search for and buy a multi-unit property.

Huang also told Zhong that she could not bring money into the United States fast enough to pay for remodeling and other expenses related to her rental property while she still had to take care of her children's living expenses, and so she needed Zhong to loan her the money to cover the expenses related to the rental property. She told him she would pay him back when her children no longer relied on her to take care of all their living and medical expenses. Over the years, Zhong advanced more than $47,000 to evict tenants and remodel the property, based on Huang's requests and her promises to pay him back after her children were grown.

In July 2015, Zhong helped Huang and her husband search for and buy a second multi-unit property, which contained three units including the "405 Apartment." Although the property was purchased in the name of their daughter Wu, Huang and her husband "made it clear" to Zhong and the property manager that they, and not Wu, were the actual owners of the property, and that all rental income should be forwarded to them. Zhong and the property manager complied with that instruction, and Wu was aware of the arrangement. Over the years, Zhong advanced more than $39,900 to remodel and repair the property, all based on Huang's requests and her promises to pay him back after her children were grown.

All Zhong's loans to Huang's family were outstanding at the time the cross-complaint was filed.

After Zhong helped remodel the 405 Apartment, Huang asked him to rent it out. Although Wu was the property manager for the unit, Huang asked Zhong to collect the rent in cash and transfer it to her in cash. Zhong collected the money, and paid it over to Huang once or twice a year when Huang would visit her San Francisco residence.

In August 2020, Huang collected the rental income from the 405 Apartment through the August 2020 rent payment. Zhong asked Huang for an accounting to repay Huang's outstanding debt to him, since her children were by then able to support themselves. Huang agreed to bring the money to repay Zhong the next time she came to San Francisco, and asked Zhong to continue to collect the rental income from the 405 Apartment and hold onto it until she returned.

Then, in September 2021, Zhong received a letter from Wu's attorney, a copy of which was attached to the complaint. The letter stated that Zhong's services to collect rent from the tenant of the 405 Apartment were no longer required, and asked for all the rent he had collected since November 2018.

Zhong alleged that he immediately contacted Huang, who refused to talk to him except to tell him that Wu was managing the rental properties and he should ask her to repay the loan. He alleged that he tried to contact Wu, but to no avail, and instead received her complaint for conversion and breach of fiduciary duty.

Zhong's cross-complaint alleged five causes of action. Two of them, styled "Fraud/Intentional Misrepresentation and False Promise" and "Negligent Misrepresentation," are alleged as to Huang only. In these causes of action Zhong alleged that Huang induced him to pay for remodeling and other expenses related to her rental properties by promising that she would pay him back once her children grew up; that she never intended to pay him

4

back, or that even if she believed her representations and promises she had no reasonable ground for such beliefs; that she intended him to rely on her misrepresentations and promises; and that he reasonably relied on them, based on his long-time friendship with her, and provided her with at least $87,000 for remodeling and other expenses associated with the rental properties, which she had not paid him.

Zhong alleged three causes of action, styled "Common Counts," "Fraudulent Deceit," and "Conspiracy," against both Huang and Wu. With respect to the common counts, Zhong alleged that Huang and Wu were indebted to him for expenses he paid in connection with the rental properties. In his fraudulent deceit and conspiracy causes of action, Zhong alleged that in 2015 Huang initiated a scheme to defraud Zhong. The scheme involved Huang asking Zhong to rent out the 405 Apartment and collect the rents, with all rents received and transferred in cash, so there would be no canceled checks to provide evidence that money had been transferred. Zhong alleged that Wu was aware of the scheme and agreed with Huang that they would avoid paying back the money Zhong had loaned to the family, and that Wu helped Huang carry out the scheme by falsely accusing Zhong of converting rent proceeds in an amount that would cancel out the debt.

Zhong sought compensatory and punitive damages, plus interest, attorney fees, and costs of suit.

C.    *Motion to Strike*

Wu filed an anti-SLAPP special motion to strike Zhong's cross-complaint under Code of Civil Procedure section 425.16, subdivision (b)(1).[1]

---

[1] Subsequent statutory references are to the Code of Civil Procedure unless otherwise stated. The anti-SLAPP statute was enacted to deter " 'strategic lawsuits against public participation,' " or " 'SLAPP suits.' " (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321.)

5

The trial court denied the motion on the ground that Wu failed to show that the cross-complaint arose from her protected activity. Wu timely appealed.

## DISCUSSION

On appeal, Wu argues that the trial court erred in denying her motion to strike with respect to Zhong's causes of action for fraudulent deceit and conspiracy. Wu argues that those causes of action are based on her conversion claim against Zhong and her prelitigation demand letter, which are protected activities, and that Zhong failed to make a prima facie case that he could prevail on either cause of action.

A. *Applicable Law and Standard of Review*

"The anti-SLAPP statute is 'designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)' (*Wilson* [*v. Cable News Network, Inc.* (2019)] 7 Cal.5th [871,] 883-884.)" (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1008-1009 (*Bonni*).)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' (*Park* [*v. Board of Trustees of California State University* (2017)] 2 Cal.5th [1057,] 1061 [(*Park*)].) Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' (*Ibid.*)" (*Bonni, supra,* 11 Cal.5th at p. 1009.)

6

In the first step of the analysis, courts determine "whether the plaintiff's claims arise from protected activity. At this first step, courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)

Section 425.16, subdivision (e), identifies four categories of protected activity. As relevant here, those categories include "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Id.*, subd. (e)4).) " 'The constitutional right to petition . . . includes the basic act of filing litigation.' " (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784.) And as a general matter, a demand letter sent in anticipation of litigation is also "entitled to the benefits of section 425.16." (*Ibid.*)

If the court finds that the defendant has made the required showing with respect to the first step of the analysis, the court proceeds to the second step, which requires it to "determine whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Navellier v. Sletten* (2002) 29 Cal.4th 83, 88 (*Navellier*).) "[T]o establish the requisite probability of prevailing [citation], the plaintiff need only have ' "stated and substantiated a legally sufficient claim." ' [Citations.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the

evidence submitted by the plaintiff is credited." ' [Citations.]" (*Id.* at pp. 88-89.)

A "prevailing defendant" on a special motion to strike is entitled to recover attorney fees and costs. (§ 425.16, subd. (c).)

We apply the de novo standard of review to an order denying an anti-SLAPP special motion to strike. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

B.    *Analysis*

To determine whether Zhong's causes of action for fraudulent deceit and conspiracy arise from protected conduct, we consider the elements of the claims, the actions Zhong alleged to establish the elements, and whether those actions are protected. (*Bonni, supra,* 11 Cal.5th at p. 1015.) Wu has the burden of identifying allegations of protected activity and the claims for relief that are supported by those allegations. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)

Even if a cause of action is " 'triggered' by protected activity," the cause of action does not necessarily arise from protected activity for purposes of the anti-SLAPP statute, because "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier, supra,* 29 Cal.4th at p. 89.) In our analysis, we must "respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Park, supra,* 2 Cal.5th at p. 1064.)

"If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177

8

Cal.App.4th 1264, 1272; see also *Bonni*, *supra*, 11 Cal.5th at p. 1012 [" '[a]ssertions that are "merely incidental" or "collateral" are not subject to section 425.16 . . . [and] cannot be stricken under the anti-SLAPP statute' "].) But to the extent protected acts are alleged as a basis for relief and not merely as background, the acts must be analyzed separately under the two-step anti-SLAPP framework. (*Bonni* at p. 1012.)

If a claim is based on allegations of protected acts, and if the plaintiff cannot show that the claim has at least minimal merit, the allegations of protected acts will be stricken. But to the extent claims are based on unprotected acts, the claims will survive an anti-SLAPP motion to strike. (*Bonni*, *supra*, 11 Cal.5th at p. 1012.)

Wu argues that Zhong's causes of action for fraudulent deceit and conspiracy are based on two protected activities: Wu's sending Zhong a prelitigation demand letter, and her filing and prosecuting her claim for conversion.[2] We are not persuaded.

In his cause of action for fraudulent deceit, Zhong alleges that since 2015, when Huang and her husband bought a rental property in Wu's name, Wu and Huang acted together to deceive Zhong into collecting rent payments for the 405 Apartment in cash, and transferring them to Huang in cash, so that there would be no records of the transfers and they could claim an offset for the money Zhong spent on their rental properties, thereby avoiding the need to repay him. In other words, Zhong alleges that Wu and Huang were

---

[2] Wu observes that "[c]onspiracy is not a cause of action but a legal doctrine that imposes liability." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510.) Zhong responds that his allegations of conspiracy provide a basis for imposing liability on Wu for the causes of action he has alleged against Huang for intentional and negligent misrepresentation.

engaging in a set-up to avoid paying back the money he had laid out; that set-up is the fraudulent activity from which Zhong's cause of action arises. Zhong's cross-complaint *refers* to Wu's demand letter and to her claim that he converted the rental proceeds, but Zhong does not *allege* that the demand letter or complaint give rise to the cause of action: instead, his allegations concerning the demand letter and subsequent complaint provide evidence to support his claim that Wu, the nominal owner of the property, was aware of the arrangement requiring him to collect the rent and transfer it to Huang, and that Wu and Huang intended to avoid paying him any of the money he had laid out on their behalf. As allegations that provide evidentiary support for the claim of fraudulent deceit, the allegations are not subject to the anti-SLAPP statute, even though they refer to protected activity. (*Park*, *supra*, 2 Cal.5th at p. 1064.)

Similarly, in his cause of action for conspiracy, Zhong alleges that, with Wu's awareness, agreement, and participation, Huang initiated a scheme to defraud him of the money he loaned by asking him to rent out the 405 Apartment, collect the rent in cash, and transfer it to Huang. The allegation that Wu accused Zhong of conversion is made by way of providing evidence that Wu was involved in Huang's scheme, and therefore the allegation is not subject to the anti-SLAPP statute.

In both causes of action, for fraudulent deceit and conspiracy, Zhong alleges that he was injured in two ways: "Not only had he not been paid back the money he loaned Cross-Defendant Huang and her family, but he was accused of converting the rental proceeds that he had collected on Huang's behalf and delivered to Huang." (Cross-Complaint, ¶¶ 56, 64.) We do not read Zhong's allegations as claiming injury from the demand letter or complaint in and of themselves. To the contrary, he seeks relief based on

10

Huang and Wu's failure to pay him the money they owe him: the accusation of conversion is part of an alleged fraudulent scheme, and is incidental to, not the cause of, his alleged injury. As Zhong puts it, he "mentions the wrongful accusation" while describing how he was harmed by the alleged scheme to avoid repaying him, but he does not allege a cause of action that arises from the accusation itself, such as intentional infliction of emotional distress.

To support her argument that Zhong's claims rest on protected activity, Wu relies on *Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903 and *Rohde v. Wolf* (2007) 154 Cal.App.4th 29, but those cases are not like the one before us. This is not a case where "[t]he entire lawsuit is premised on [Wu's] demand letter." (*Blanchard, supra,* 123 Cal.App.4th at p. 918.) Nor is this a case in which Zhong is suing for defamation based on the demand letter or the complaint Wu filed against him. (See *Rohde, supra,* 154 Cal.App.4th at p. 32 [plaintiff sued for defamation based on voicemail messages containing accusations of fraud and threatening to take "appropriate action"].) The actions giving rise to Zhong's claim of fraudulent deceit—the alleged scheme to avoid repaying Zhong by arranging an offsetting false debt, made possible by requiring Zhong to collect rent in cash and pay it over in cash so no records would exist, all done with Wu's knowledge and approval—occurred long before Wu sent the demand letter or filed her complaint.

Because Wu has not met her burden to show that Zhong's causes of action for fraudulent deceit and conspiracy arise from protected activity, we do not reach the second step of the anti-SLAPP analysis.

**DISPOSITION**

The challenged order is affirmed. Zhong is entitled to recover his costs on appeal.

11

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Markman, J.*




A165948, *Wu v. Zhong*

---

* Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.